**UNITED STATE DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LORILLARD TOBACCO COMPANY, a
Delaware corporation,

                Plaintiff,

v.

YAZAN'S SERVICE PLAZA, INC., a
Michigan corporation,

                Defendants.
_____ /

Case Number: 05-70804

JUDGE PAUL D. BORMAN
MAG. JUDGE WALLACE CAPEL, JR.
UNITED STATES DISTRICT COURT

## OPINION AND ORDER DENYING DEFENDANT YAZAN'S SERVICE PLAZA, INC.'S AND THIRD-PARTY PLAINTIFF YAZAN MUSLEH'S MOTION TO AMEND SCHEDULING ORDER (DOCK. NO. 89)

Now before the Court is Defendant Yazan's Service Plaza, Inc.'s Motion to Amend Scheduling Order.  Having considered the entire record, and for the reasons that follow, the Court DENIES Defendant Yazan's Service Plaza, Inc.'s Motion to Amend Scheduling Order.

**I.    FACTS**

In February of 2005, Lorillard Tobacco Company ("Plaintiff") received a complaint from a consumer ("tipster") via its "1-800" consumer hotline number.[1]  The tipster's complaint was in regards to Plaintiff's NEWPORT brand[2] cigarettes purchased at Defendant Yazan's Service Plaza, Inc. ("Defendant" or "Yazan").  (Dock. No. 106, Opinion 2).  Plaintiff sent

---

[1] It appears the hotline number existed for the purpose of reporting possible counterfeit cigarettes.  (Dock. No. 106, Opinion 2).

[2] The name NEWPORT was registered with the United States Patent and Trademark Office ("USPTO") on December 12, 1978 and owned by Plaintiff.  (Compl. Ex. B).  Plaintiff also registered the NEWPORT design and symbol with the USPTO.  (*See* Compl. Ex. C, D, E).

1

Michael McCord ("McCord"), a sales representative, to investigate Defendant on the basis of the complaint. McCord discovered, and Plaintiff eventually confirmed, counterfeit cigarettes on Defendant's premises. (*Id*.). Upon discovery of the counterfeit cigarettes, Plaintiff filed a six-count Complaint[3] on March 2, 2005. (*Id*.) Plaintiff also filed a Motion for Ex Parte Seizure Order, Temporary Restraining Order, Preliminary Injunction, and Order Accelerating Discovery, which this Court granted. Subsequently, Plaintiff found fifty-one packs of counterfeit NEWPORT brand cigarettes on Defendant's premises during the execution of the Seizure Order. (*Id*.).

On May 18, 2005, Defendant answered the Complaint and filed a four-count Counterclaim alleging abuse of process, tortious interference with business expectations or relationships, common law unfair competition, and extreme and outrageous conduct. (Dock. No. 7).

On January 31, 2006, the Magistrate Judge held a motion hearing and ruled from the bench, granting Defendant leave to file a first amended counterclaim and granting Yazan Musleh leave to intervene. The Magistrate Judge issued his written order granting Defendant leave to file a first amended counterclaim and granting Yazan Musleh leave to intervene, on March 15, 2006 (Dock. No. 63).

Defendant's attorney moved to withdraw as counsel on April 4, 2006. Plaintiff did not

---

[3]  Count I:    Trademark Counterfeiting and Infringement, 15 U.S.C. § 1114
     Count II:   Federal Unfair Competition and False Designations of Origin, and False and Misleading Representations, 15 U.S.C. § 1125(a)
     Count III:  Trademark Dilution, 15 U.S.C. § 1125(c)
     Count IV:   Common Law Unfair Competition
     Count V:    Statutory Unfair Competition, MCL 429.42(a)
     Count VI:   Michigan Consumer Protection Act, MCL 445.903

oppose the motion. The motion was referred to Magistrate Judge Capel, who issued an order granting the withdrawal of Defendant's counsel on April 13, 2006. Magistrate Judge Capel ordered Defendant to obtain new representation within fourteen days of receipt of the order.

On May 1, 2006, seventeen days after Magistrate Judge Capel issued his order, Defendant's new counsel filed his appearance. The discovery period ended on April 26, 2006. Defendant did not file its Amended Counterclaim until June 1, 2006.

On June 7, 2006, Defendant and Third-Party Plaintiff Yazan Musleh file the instant Motion to Amend the Scheduling Order. Plaintiff opposed this motion and filed a response on June 21, 2006.

On June 8, 2006, Plaintiff filed a Motion to Strike Defendant's First Amended Counterclaim as Untimely. Defendant responded on June 22, 2006.[4] On July 17, 2006, the Magistrate Judge entered an order granting Plaintiff's Motion to Strike Defendant's First Amended Counterclaim As Untimely. Defendant appealed the Magistrate Judge's July 27, 2006 ruling. However, on August 22, 2006, this Court accepted the Magistrate Judge's ruling that Defendant's First Amended Counterclaim was untimely.

## II.     ANALYSIS

### A.     Standard of Review

Federal Rule of Civil Procedure 16(b) requires that a party seeking a scheduling order extension must demonstrate good cause for such an amendment.

> A schedule shall not be modified except upon a showing of good cause and by leave of the district court or, when authorized by local rule, by a magistrate judge.

---

[4] Entered on stipulation by the parties.

3

FED. R. CIV. P. 16(b).  "The primary measure of Rule 16's good cause standard is the moving party's diligence in attempting to meet the case management order's requirements." *Rose v. Saginaw County*, 353 F. Supp. 2d 900, 927 (E.D. Mich. 2005) (citing *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002).  More specifically, "Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party.  Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment.  Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." *Amoco Pipeline Co. v. Herman Drainage Sys.*, 212 F. Supp. 2d 710 (W.D. Mich. 2002) (citing *Dilmar Oil Co. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D. S.C. 1997)).

Matters of docket control and discovery are left to the discretion of the trial court, absent actual and substantial prejudice to a litigant*. See In re Air Crash Disaster*, 86 F.3d 498, 516 (6th Cir. 1996).  "[A] court choosing to modify the schedule upon a showing of good cause, may do so only 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Estate of Kirby v. Duva*, Case No. 05-CV-71884, WL 1722206, *1 (E.D. Mich. June 20, 2006) (citing *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003)).

### B. Discussion

Defendant argues that there is good cause to amend the scheduling order.  Defendant contends that the need to amend the scheduling order is not the result of a lack of diligence on their part.  Defendant asserts that one of the reasons an amended scheduling order is needed is because of Defendant's original counsel's decision to withdraw in April.  Defendant claims that when new counsel was retained, an Amended Counterclaim was "expeditiously" filed and

4

included new claims, which must be supported through new discovery.  Defendant also argues that three depositions, which were noticed in January, never occurred and thus necessitate an extension of the discovery deadline to complete the depositions.

Plaintiff responds that Defendant does not have the good cause necessary to amend the scheduling order.  Plaintiff avers that Defendant's original counsel had over three months before his withdrawal to conduct the discovery which Defendant's new counsel seeks, and thus Defendant's retention of new counsel cannot constitute good cause necessary to allow an amendment of the scheduling order.  Plaintiff also contends that the filing of the Amended Counterclaim cannot form the basis for good cause to amend the scheduling order because the discovery extension on January 20, 2006 (extending discovery to April 26, 2006) was for the specific purpose of conducting discovery on the Amended Counterclaim.  More importantly, Plaintiff argues that Defendant's failure to complete discovery during the discovery period is not the basis for good cause because Defendant's failure was not caused or delayed by Plaintiff.  To support its position, Plaintiff argues that while Defendant noticed the three depositions in question on January 19, 2006, questions remained regarding the scope of discovery.  Plaintiff asserts that it was willing to resolve the issues between the parties and produce the witnesses for deposition once the outstanding issues were resolved.  Further, Plaintiff claims that the last communication on the issue was from Plaintiff on February 10, 2006, over two months before discovery was set to close.  Plaintiff believes that Defendant's failure to respond to its requests constitutes a waiver of Defendant's right to take the requested deposition.

The Court first finds that the change in counsel representing Defendant is not good cause to amend the scheduling order.  The discovery period was extended for a second time on January

20, 2006. The extended discovery period provided Defendant's original counsel seventy-four days to conduct the necessary discovery before the date he filed his motion to withdraw. Although Defendant argues that it missed out on conducting discovery during the entire month of April, Defendant only missed twenty-two days of discovery due to his counsel's withdrawal. Defendant had plenty of time to conduct discovery, and the Court finds that the withdrawal of counsel is not good cause to amend the scheduling order.

The Court also finds that since Defendant's Amended Counterclaim has been stricken, there is no reason to amend the scheduling order. Defendant argues that since the Amended Counterclaim contains new claims against Plaintiff, it needs the opportunity to conduct additional discovery on those new claims. On August 23, 2006, this Court upheld Magistrate Judge Capel's order striking Defendants Amended Counterclaim.

Defendant also argues that the scheduling order should be amended because it noticed the depositions of Bob Richardson, Gregory Suhajda, and James Babish in January 2006, and those depositions have yet to occur. Defendant insinuates that Plaintiff purposely failed to produce those individuals.[5] Plaintiff, on the other hand, argues that Defendant failed to take the depositions by its own choice and not due to any actions by Plaintiff. Plaintiff further contends that it was the last party to communicate regarding the depositions.

The communications between the parties on the issue of the depositions in question followed the timeline below.

1.    On January 19, 2006 Defendant served notice of depositions for Richardson, who was Plaintiff's corporate representative, and two third-party private investigators

---

[5] Defendant states: "Despite these notices, to date, Mr. Richardson, Mr. Suhajda, and Mr. Babish have not been produced for deposition by Lorillard." (Def.'s Br. 2).

6

       retained by Plaintiff.  The deposition notices scheduled the deposition to occur on January 25 and 26, 2006, the last days of the discovery period.  (Def.'s Br. Ex. C, Notice of Depositions).

2. On January 20, 2006, Plaintiff's counsel sent an email to Defense counsel Weiner and Blakeslee, stating that January 25, 2006 was offered by Plaintiff's counsel for another deposition in the case, and there would probably not be enough time to schedule Defendant's depositions on that date.  Plaintiff's counsel also mentioned that she was facilitating in Oakland County Circuit Court on January 26, 2006, and thus not available that day.  Finally, Plaintiff's counsel suggests they extend discovery ninety days. (Pl.'s Resp. Ex. 1, Lang Email 1/20/06 9:53 a.m.).

3. On January 20, 2006, Defense counsel Blakeslee sent a letter to Plaintiff's counsel accepting the extension of discovery and asking how Plaintiff's counsel wants to handle the scope of the Suhajda and Babish's depositions.  The letter also asked for a date that Defense counsel could take Richardson's deposition. (Pl.'s Resp. Ex. 3, Blakeslee Letter 1/20/06).   Defense counsel Blakeslee also sent an email summarizing the day's conversations between the parties.  (Pl.'s Resp. Ex. 3, Blakeslee Email 1/20/06 2:44 p.m.)

4. On January 20, 2006, Plaintiff's counsel sent an email stating that (1) the investigators can be deposed, but not about further investigations in this case or on other issues as it was protected by attorney-client privilege; (2) the Richardson deposition would not take place until the issues regarding scope are resolved; and (3) their 30(b) witness was Ed O'Brien. (Pl.'s Resp. Ex. 3, Lang Email 1/20/06 3:18 p.m.)

5. On January 20, 2006, Defense counsel Blakeslee sent an email stating that they probably can not reach an agreement on the scope of the investigator's depositions.  Defense counsel Blakeslee indicated that she would think about it over the weekend and advise Plaintiff's counsel of what sort of questions she would want to ask beyond the deponents contacts with the witnesses. (Pl.'s Resp. Ex. 3, Blakeslee Email 1/20/06 3:43 p.m.)

6. On February 10, 2006, Plaintiff's counsel sent a letter to Defense counsel Weiner and Blakeslee addressing the outstanding issues regarding discovery and the hearing of January 31, 2006 that still needed to be resolved, including discussing dates for the depositions.  (Pl.'s Resp. Ex. 4, Lang Letter 2/10/06)

Defendant does not dispute this timeline, nor does it provide evidence of additional communications.  It appears to the Court that Defendant failed to respond to Plaintiff's February 10, 2006 communication.  Because 'good cause' means that scheduling deadlines cannot be met

7

despite a party's diligent efforts, Defendant's lack of diligent effort in pursuing a date to take its depositions since February 10, 2006, shows a lack of good cause.

## III.     CONCLUSION

For the reasons stated above, the Court DENIES Defendant Yazan Service Plaza and Third-Party Plaintiff Yazan Musleh's Motion to Amend the Scheduling Order.

**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  August 23, 2006

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on August 23, 2006.

s/Denise Goodine
Case Manager

8