**UNITED STATE DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LORILLARD TOBACCO COMPANY, a
Delaware corporation,

        Case Number: 05-70804

        Plaintiff,

        JUDGE PAUL D. BORMAN
v.        MAG. JUDGE WALLACE CAPEL, JR.
        UNITED STATES DISTRICT COURT

YAZAN'S SERVICE PLAZA, INC., a
Michigan corporation,

        Defendants.
_____ /

**OPINION AND ORDER (1) GRANTING PLAINTIFF LORILLARD TOBACCO CO.'S MOTION FOR JUDGMENT ON THEGAMMA9 PLEADINGS AS TO DEFENDANT YAZAN'S SERVICE PLAZA, INC'S COUNTERCLAIM COUNTS I, III, AND IV; (2) DENYING PLAINTIFF LORILLARD TOBACCO CO.'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO DEFENDANT YAZAN'S SERVICE PLAZA, INC'S COUNTERCLAIM COUNT II; AND (3) GRANTING PLAINTIFF LORILLARD TOBACCO CO.'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT II (DOCK. NO. 85)**

      Now before the Court is Plaintiff Lorillard Tobacco Co.'s Motion for Judgment on the

Pleadings and/or Summary Judgment as to Defendant Yazan's Service Plaza, Inc.'s

Counterclaim (Docket No. 85). A motion hearing was held on August 30, 2006. Having

considered the entire record, and for the reasons that follow, the Court:

    (1)    GRANTS Plaintiff's Motion for Judgment on the Pleadings as to Counts I, III,
          and IV;

    (4)    DENIES Plaintiff's Motion for Judgment on the Pleadings as to Count II; and

    (5)    GRANTS Plaintiff's Motion for Summary Judgment as to Count II in its entirety.

**I.      FACTS**

In February of 2005, Lorillard Tobacco Company ("Plaintiff") received a complaint from a consumer ("tipster") via its "1-800" consumer hotline number.[1] The tipster's complaint was in regards to Plaintiff's NEWPORT brand[2] cigarettes purchased at Defendant Yazan's Service Plaza, Inc. ("Defendant" or "Yazan").  (Docket No. 106, Opinion 2).  Plaintiff sent Michael McCord ("McCord"), a sales representative, to investigate Defendant on the basis of the complaint.  While checking the NEWPORT brand cigarettes, McCord observed many packs of cigarettes that he suspected of being counterfeit.  McCord removed one carton and one pack of the suspected counterfeit cigarettes and replaced it with genuine NEWPORT product.  (Pl.'s Br. 3).  After the removed cigarettes were inspected by Plaintiff, it was confirmed that they were counterfeit.  (*Id*. at 4).  Upon discovery of the counterfeit cigarettes, Plaintiff filed a six-count Complaint[3] on March 2, 2005.  (*Id.*)  Plaintiff also filed a Motion for Ex Parte Seizure Order, Temporary Restraining Order, Preliminary Injunction, and Order Accelerating Discovery, which this Court granted.  (*Id.*).  Subsequently, Plaintiff found fifty-one packs of counterfeit

---

[1] It appears the hotline number existed for the purpose of reporting possible counterfeit cigarettes.  (Docket No. 106, Opinion 2).

[2] The name NEWPORT was registered with the United States Patent and Trademark Office ("USPTO") on December 12, 1978 and owned by Plaintiff.  (Compl. Ex. B).  Plaintiff also registered the NEWPORT design and symbol with the USPTO.  (*See* Compl. Ex. C, D, E).

[3]
| | | |
|---|---|---|
| | Count I: | Trademark Counterfeiting and Infringement, 15 U.S.C. § 1114 |
| | Count II: | Federal Unfair Competition and False Designations of Origin, and False and Misleading Representations, 15 U.S.C. § 1125(a) |
| | Count III: | Trademark Dilution, 15 U.S.C. § 1125(c) |
| | Count IV: | Common Law Unfair Competition |
| | Count V: | Statutory Unfair Competition, MCL 429.42(a) |
| | Count VI: | Michigan Consumer Protection Act, MCL 445.903 |

NEWPORT brand cigarettes on Defendant's premises during the execution of the Seizure Order.[4]  (*Id*.).

On May 18, 2005, Defendant answered the Complaint and filed a four-count Counterclaim alleging abuse of process, tortious interference with business expectations or relationships, common law unfair competition, and extreme and outrageous conduct arising out of Plaintiff's seizure of counterfeit cigarettes.[5]  (Docket No. 7, Answer and Counterclaim). Defendant claims that the items seized were planted at Defendant's site by Plaintiff's sales representative, Michael McCord, at an earlier date.[6]  (*Id*.).

On April 27, 2005, before Defendant filed responsive pleadings, it claimed that a fake seizure occurred on the premises which resulted in the loss of documents and other evidence supporting its claim.  (*Id*.).  At the alleged fake seizure, only one of Defendant's employees was present, Mohammed Algaheim.[7]  (*Id*.).  After learning of the alleged fake seizure, Plaintiff advised the Court and had the U.S. Attorney and F.B.I. investigate the incident.  (*Id*. at 4 n.5). No charges were filed subsequent to the investigation.  (*Id*.).

---

[4] All of the packs found during the seizure were NEWPORT King size soft pack cigarettes.  (*Id*.).

[5] The Counterclaim was filed after evidence which allegedly supported Defendant's claim, including a business computer and store surveillance tapes, were taken.  (Pl.'s Br. 5).

[6] Because Defendant alleges that the counterfeit items were planted, it refers to Plaintiff's seizure of this items as a "fake seizure."

[7] Mr. Algaheim allegedly left the country after the fake seizure and was unable to be located or produced for deposition until Defendant mentioned in its Motion to Amend Scheduling Order that Algaheim had returned from Yemen and is now free to be deposed. (Docket No. 89, Jun. 7, 2006, Def.'s Br. 3)

On January 31, 2006, Magistrate Judge Capel held a motion hearing and ruled from the bench, granting Defendant leave to file a first amended counterclaim and granting Yazan Musleh leave to intervene. The Magistrate Judge issued his written order granting Defendant leave to file a first amended counterclaim and granting Yazan Musleh leave to intervene, on March 15, 2006 (Docket No. 63).

Magistrate Judge Capel issued an order on March 23, 2006, compelling Defendant to produce its business computer, which Defendant alleged was tampered with during the fake seizure, so that Plaintiff's experts could inspect the computer. (*See* Docket No. 66, Order to Show Cause). However, Defendant failed to preserve the evidence referred to in the March 23, 2006 order.[8] Accordingly, the Magistrate Judge sanctioned Defendant by entitling Plaintiff to "an adverse inference and jury instruction that . . . Defendant's computer contained information relevant to the lawsuit, that Defendant deliberately destroyed that information contrary to [Magistrate Judge Capel's order], and that the information that was contained on Defendant's computer would have supported the claims and defenses of Plaintiff [] in this action and would have been adverse to the claims and defenses set forth by Defendant [] in this action." (Docket No. 84, Order 2).

Defendant's attorney then moved to withdraw as counsel on April 4, 2006. Plaintiff did not oppose the motion. The motion was referred to Magistrate Judge Capel, who issued an order granting the withdrawal of Defendant's counsel on April 13, 2006. Magistrate Judge Capel

---

[8] Specifically, the March 23, 2006 order allowed Plaintiff's representatives to create an image of the hard drive, inspect Defendant's business computer and any parts for alteration, destruction, damage or manipulation. (Docket No. 66, Order ¶ 1). Defendant was also ordered not to tamper with the computer. (*Id*. at ¶ 2).

4

ordered Defendant to obtain new representation within fourteen days of receipt of the order.

On May 1, 2006, seventeen days after Magistrate Judge Capel issued his order, Defendant's new counsel filed his appearance. The discovery period ended on April 26, 2006. Defendant did not file its Amended Counterclaim until June 1, 2006.

On June 7, 2006, Defendant and Third-Party Plaintiff Yazan Musleh file the instant Motion to Amend the Scheduling Order. Plaintiff opposed this motion and filed a response on June 21, 2006.

On June 8, 2006, Plaintiff filed a Motion to Strike Defendant's First Amended Counterclaim as Untimely. Defendant responded on June 22, 2006.[9] On July 17, 2006, the Magistrate Judge entered an order granting Plaintiff's Motion to Strike Defendant's First Amended Counterclaim As Untimely. Defendant appealed the Magistrate Judge's July 27, 2006 ruling. On August 22, 2006, this Court accepted the Magistrate Judge's ruling that Defendant's First Amended Counterclaim was untimely.

Plaintiff argues that it should be granted summary judgment on Defendant's abuse of process claim because Michigan law does not allow the initiation of litigation to be the basis for an abuse of process claim, and that Defendant has no admissible evidence to support its assertions.

Plaintiff contends that summary judgment is proper on Defendant's tortious interference claim because Defendant fails to allege that Plaintiff's initiation of the lawsuit caused Defendant's business expectations/relationships to termination. Plaintiff also contends that Defendant cannot show that Plaintiff's actions were done with an improper motive.

---

[9] Entered on stipulation by the parties.

Plaintiff avers that summary judgment is proper on Defendant's extreme and outrageous conduct claim because there is no such cause of action in Michigan.  In the event that Defendant is really pleading an IIED claim, Plaintiff asserts that the claim should fail because a corporate entity cannot sustain emotional distress.

Plaintiff asserts that summary judgment is proper on Defendant's unfair competition claim because the allegations are insufficient and unsupportable.

Defendant argues that there are significant disputes of material fact regarding whether or not McCord planted counterfeit cigarettes at Defendant.  Defendant contends that Plaintiff can be held liable for tortious actions taken by McCord as he was acting as an agent of Plaintiff at the time the actions were undertaken.  Defendant asserts that the tortious interference claims was properly pled and is supported by substantial evidence.  Defendant admits that its unfair competition claim should be dismissed, and that its abuse of process and extreme and outrageous conduct claims are insufficient and improper as plead.

## II.     ANALYSIS

### A.     Standard of Review

A Rule 12(c) motion for judgment on the pleadings for failure to state a claim upon which relief can be granted is nearly identical to that employed under a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss.  *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001).  "Rule 12(b)(6) affords a defendant an opportunity to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."  *Global Export/Import Link, Inc. v. United States Bureau of Citizenship and Immigration Servs.*, 423 F. Supp. 2d 703, 704 (E.D. Mich. 2006) (internal citations omitted).  "In applying Rule 12(b)(6),

the Court must presume all well-pleaded factual allegations in the complaint to be true and draw all reasonable inferences from those allegations in favor of the non-moving party." *Id*. All papers and exhibits appended to the Complaint may be considered. *N.I.P.P. Royal Oak, LLC v. City of Royal Oak*, 420 F. Supp. 2d 791, 797 (E.D. Mich. 2006).

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48

(1986). Conversely, where a reasonable jury could not find for the non-moving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

**B.     Discussion**

**1.     Abuse of Process (Count I)**

Defendant concedes that the Counterclaim fails to allege any improper actions taken after the initiation of the current lawsuit by Plaintiff. Defendant also concedes that this claim was insufficient as pled. As a result, the Court grants Plaintiff's Motion for Judgment on the Pleadings as to Defendant's abuse of process claim.

**2.     Unfair Competition (Count III)**

Defendant concedes that its unfair competition claim fails to state a claim upon which relief can be granted.  Defendant does not contest Plaintiff's request that this claim be dismissed.  Accordingly, the Court grants Plaintiff's Motion for Judgment on the Pleadings as to Defendant's unfair competition claim.

### 3. Extreme and Outrageous Conduct (Count IV)

Defendant concedes that its extreme and outrageous conduct claim was improperly pled because that claim is something a corporation can suffer.  Accordingly, the Court grants Plaintiff's Motion for Judgment on the Pleadings as to Defendant's extreme and outrageous conduct claim.

### 4. Tortious Interference with a Business Expectancy or Relationship (Count II)

Plaintiff argues that Defendant's tortious interference claim fails to allege that Plaintiff's initiation of the lawsuit caused its business expectations or relationships to terminate and fails to allege, with specificity, affirmative acts by Plaintiff that corroborate the improper motive of interference.  Plaintiff contends that Defendant cannot demonstrate that Plaintiff's actions were done with an improper motive and that Defendant has no evidence to support its assertion that Plaintiff, by bringing this lawsuit, has tortiously interfered with Defendant's business expectations or relationships with its suppliers and customers or caused them to terminate any relationship they had with Defendant.  Plaintiff asserts that Defendant continues to sell NEWPORT brand cigarettes.

Defendant responds that its reputation with customers and suppliers has been significantly damaged.  Defendant avers that it has sufficiently pled that Plaintiff has committed

unlawful acts which have tortiously interfered with Defendant's ongoing business relationship with its customers and suppliers, resulting a substantial decrease in cigarette sales. Defendant asserts that the unlawful acts were pled in the Counterclaim and established by McCord's bribe attempt and McCord's planting of the counterfeit cigarettes found at the service Plaza. Defendant also argues that Plaintiff should be held liable for McCord's actions because the alleged illegal acts were not done within the scope of McCord's employment, but in the scope of his authority. Defendant believes that McCord was aided in accomplishing the illegal acts by the existence of his agency relationship with Plaintiff. Defendant relies on *Borsuk v. Wheeler*, 113 Mich. App. 403 (1984).

In reply, Plaintiff identifies two grounds upon which Defendant's tortious interference claim is premised. Plaintiff argues that the first basis is premised on the institution and prosecution of this action. Plaintiff avers that initiating an action is not illegal, unethical, or fraudulent and therefore Defendant's claim should be dismisses to the extent it is based on the above premise. Plaintiff believes that the second basis upon which Defendant's Count II is premised is upon the alleged unlawful act of Plaintiff's employee, McCord. Plaintiff asserts that McCord's alleged actions, if true, were not within the scope of his employment because they were illegal acts. Plaintiff supports its position by arguing that Defendant errs in its attempt to compare the facts of the instant case to that of *Borsuk*. Plaintiff believes that McCord did not use the nature of Plaintiff's business to perpetrate the act. Plaintiff claims that McCord was hired to manage a sales force and to have as many retailers selling Plaintiff's cigarettes as possible. Plaintiff asserts that demanding bribes or planting counterfeit cigarettes are not a function of McCord's job and not what he was hired to do.

10

The elements of tortious interference with a business relationship are the: (1) existence of a valid business relationship or expectancy; (2) the knowledge of the relationship or expectancy on the part of the defendant; (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy; and (4) the resultant damage to the plaintiff. *Raymond James & Assocs. v. Leonard & Co.*, 411 F. Supp. 2d 689, 698 (E.D. Mich. 2006) (citing *BPS Clinical Lab. v. Blue Cross & Blue Shield*, 217 Mich. App. 687, 698-99 (1996)). "[O]ne who alleges tortious interference with a contractual or business relationship must allege (1) the intentional doing of a per se wrongful act, or (2) the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading plaintiff's contractual rights or business relationship." *Feldman v. Green*, 138 Mich. App. 360, 369-70 (1984). "To establish that a lawful act was done with malice and without justification, the plaintiff must demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference." *BPS Clinical Lab.*, 217 Mich. App. at 699. It is important to bear in mind that "where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." *Id.*

### 1. Liability based upon the alleged unlawful act of Plaintiff's employee

As mentioned above, Defendant relies on a Michigan Court of Appeals case, *Borsuk v. Wheeler,* 113 Mich. App. 403 (1984). In *Borsuk*, the defendant mortgage company was named as a defendant based on the fraudulent conduct of its employees. *Id*. at 405. The employees falsified earnings and savings records in order to qualify another defendant for a home loan. *Id*. The defendant mortgage company argued that it could not be held liable for the intentional torts of its employees, especially those acts not within the scope of employment. The court held that:

11

> In the agency context, a principal may be held liable for the acts of his agent done not within the scope of his authority. The principal is liable if the agent was aided in accomplishing the tort by the existence of the agency relationship.

*Id.* at 410-11. The court found that the jobs held by the defendant employees involved responsibilities relating to the acceptance or rejecting of mortgage applications. "Thus, the conspiracy alleged [is] within the scope of [the defendant employee's] authority, even though obviously done contrary to the instructions from [defendant mortgage company]." *Id.* at 412.

Defendant analogizes this case to *Borsuk* in that McCord was aided in accomplishing the tort by the existence of the agency relationship. Defendant argues that McCord used his status as a sales representative to commit fraud, while pretending to be working under the guise of Plaintiff's authority. Defendant suggests that McCord's actions were within the scope of his authority, even though they were contrary to Plaintiff's policy or instructions.

Plaintiff attempts to distinguish *Borsuk* from the instant case by arguing that Plaintiff's business function is to sell cigarettes and use retailers as a mechanism to perform that function. Plaintiff claims that McCord was hired to manage a sales force and that his alleged illegal actions do not flow directly from his job responsibilities.

Section 219(2) of the Restatement sets forth the general rule of *respondeat superior* and states exceptions to the general rule:

> (2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:
> > (a) the master intended the conduct or the consequences, or
> > (b) the master was negligent or reckless, or
> > (c) the conduct violated a non-delegable duty of the master, or
> > (d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

12

RESTATEMENT (SECOND) OF AGENCY § 219(2). Both *Borsuk* and Defendant rely on section 219(2)(d). The Michigan Supreme Court, however, recently explained that it never adopted, nor does it adopt, the "aided by the agency relationship" exception to liability under the *respondeat superior* doctrine. *Zsigo v. Hurley Medical Center*, 475 Mich. 215, 227, 231 (2006). The court in *Zsigo* held:

> Courts have criticized § 219(2)(d) primarily because the exception swallows the rule and amounts to an imposition of strict liability upon employers. Indeed, it is difficult to conceive of an instance when the exception would not apply because an employee, by virtue of his or her employment relationship with the employer is always "aided in accomplishing" the tort. Because the exception is not tied to the scope of employment, but, rather, to the existence of the employment relation itself, the exception strays too far from the rule of respondeat superior employer nonliability.[10]

*Zsigo*, 475 Mich. at 226; *see also Kendrick v. Ritz-Carlton Hotel, Co.,* Docket No. 256696, 2006 WL 2084919, *6 (Mich. Ct. App. July 27, 2006) (unpublished) (citing *Zsigo*, 475 Mich. at 231) ("Our Supreme Court, however, flatly rejected the application of § 219(2)(d) as exception to the rule of *respondeat superior* employer nonliability. . . . [as the employee] clearly acted outside the scope of his employment when he allegedly sexually assaulted plaintiff . . ."). The *Zsigo* court also noted that an employer does not aid an employee in accomplishing a tort just because the employee's employment allows an opportunity to commit that tort. *Id*. at 226 n.25 (citing *Carwood v. Rainbow Rehab Ctr*, 269 Mich. App. 116 (2005)).

In the instant case, taking Defendant's allegations as true, McCord acted outside the scope of his employment when he placed counterfeit goods in Defendant's inventory. However, because the Michigan Supreme Court has expressly rejected section 219(2)(d) of the

---

[10] The *Zsigo* court also noted that courts which have applied the section 219(2)(d) exception, have primarily done so in sexual harassment/discrimination cases. *Id*. at 227.

13

Restatement (Second) of Agency, Defendant's "aided by the relationship" argument fails. Accordingly, the Court grants Plaintiff's Motion for Summary Judgment to the extent that Count II is premised on *respondeat superior* liability.

### 2. Liability based upon institution and prosecution of this action

Plaintiff points out that the Complaint alleges that Plaintiff's lawful institution of the action interfered with Defendant's business relationships and that Defendant must establish that an intentional *lawful* act was done with malice and without justification. Plaintiff asserts that Defendant cannot put forth affirmative acts by Plaintiff that corroborate the improper motive of interference.

Defendant, on the other hand, argues that its Complaint alleges that it was Plaintiff's *unlawful* acts, committed by McCord, which tortiously interfered with Defendant's ongoing business relationships. Defendant argues that its phrase, "Prior to Lorillard's actions, as described above," (Compl. ¶ 27), incorporates McCord's illegal acts into Count II.

The Court agrees with Defendant. Defendant can allege the doing of *per se* wrongful acts, or the intentional doing of a lawful act. Defendant has alleged the former. However, because the Court found above that there was no *respondeat superior* liability for McCord's actions, Defendant cannot meet the third element of tortious interference of a business relationship, *i.e.*, that there was an intentional interference by Plaintiff. Accordingly, the Court grants Plaintiff's Motion for Summary Judgment on the remainder of Count II.

### III.   CONCLUSION

For the reasons stated above, the Court:

(1)   GRANTS Plaintiff's Motion for Judgment on the Pleadings as to Count I;

 (2) GRANTS Plaintiff's Motion for Judgment on the Pleadings as to Count III;

 (3) GRANTS Plaintiff's Motion for Judgment on the Pleadings as to Count IV; and

 (4) DENIES Plaintiff's Motion for Judgment on the Pleadings as to Count II, but GRANTS Plaintiff's Motion for Summary Judgment as to Count II in its entirety.

This Order disposes of Defendant Yazan's Service Plaza, Inc.'s Counterclaim in its entirety.

**SO ORDERED.**

       s/Paul D. Borman
       PAUL D. BORMAN
       UNITED STATES DISTRICT JUDGE

Dated:  September 11, 2006

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on September 11, 2006.

       s/Denise Goodine
       Case Manager