**UNITED STATE DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LORILLARD TOBACCO COMPANY, a
Delaware corporation,

                  Plaintiff,

v.

YAZAN'S SERVICE PLAZA, INC., a
Michigan corporation,

                  Defendants.
_____ /

Case Number: 05-70804

JUDGE PAUL D. BORMAN
MAG. JUDGE WALLACE CAPEL, JR.
UNITED STATES DISTRICT COURT

**OPINION AND ORDER:**
**(1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO**
**LIABILITY ON COUNTS I - VI (DOCKET NO. 86);**
**(2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE**
**OF WILLFULNESS (DOCKET NO. 86)**

Now before the Court is Plaintiff's Motion for Summary Judgment as to Liability

(Docket No. 86). A motion hearing was held on August 30, 2006. Having considered the entire

record, and for the reasons that follow, the Court GRANTS Plaintiff's Motion for Summary

Judgment as to Liability on Counts I - VI, and DENIES Plaintiff's Motion for Summary

Judgment regarding willfulness.

**I.     FACTS**

Plaintiff Lorillard Tobacco Company ("Plaintiff" or "Lorillard") is a Delaware

corporation with its principal place of business in Greensboro, North Carolina. (Compl. ¶ 6).

Plaintiff manufactures and sells cigarettes in the United States. (Compl. ¶ 6; Pl.'s Br. 2).

Defendant Yazan's Smokers Shop, Inc. ("Defendant" or "Service Plaza") is a Michigan

1

corporation.

Plaintiff manufactures its cigarettes in North Carolina and distributes them throughout the county via a network of wholesalers and retailers. *Id.* Plaintiff has been using the NEWPORT[1] trademark since the mid-1950s and incorporates its trademarks into its cigarettes and cigarette packaging. *Id.*

Plaintiff holds federal registrations for the following marks (the "marks"): LORILLARD, NEWPORT, NEWPORT (stylized), Spinnaker Design, and NEWPORT and design. (Pl.'s Br. Ex. 3, Certifications of Registration).

In October of 2003, Defendant contracted with Plaintiff to receive reimbursements and product offers from Plaintiff in exchange for displaying Plaintiff's marketing and advertising materials on the premises. (Def.'s Resp. 1). Defendant claims that because of a previous, similar agreement with Plaintiff's competitor, Phillip Morris, Plaintiff and Defendant agreed that Plaintiff's advertisements would only be placed in certain locations within the Service Plaza. (*Id.* at 2). Defendant alleges that in 2004, a confrontation ensued between Plaintiff's representative and Defendant's representative regarding the placement of Plaintiff's advertisements, whereby Plaintiff's representative allegedly ripped up the contract between Plaintiff and Defendant in front of a number of witnesses at the Service Plaza. (*Id.*). Immediately following that incident, Defendant alleges that Michael McCord ("McCord"), a Lorillard sales representative, proposed that he would make the advertising problem could "go away" for $2,000.00. (*Id.*). Defendant's representative, Dr. Yazan Musleh ("Musleh"), turned

---

[1] The name NEWPORT was registered with the United States Patent and Trademark Office ("USPTO") on December 12, 1978 and owned by Plaintiff. (Compl. Ex. B). Plaintiff also registered the NEWPORT design and symbol with the USPTO. (*See* Compl. Ex. C, D, E).

2

down the "bribe" and McCord responded by allegedly stating, "I'm going to get you back, asshole." (*Id*. at 3). Musleh then contacted the Hamtramck Police Department to report the bribe and also sent a letter to Plaintiff regarding McCord's conduct. (*Id*.).

In February of 2005, Lorillard Tobacco Company ("Plaintiff") received a complaint from a consumer ("tipster") via its "1-800" consumer hotline number that existed for the purpose of reporting possible counterfeit cigarettes. (Dock. No. 106, Opinion 2). The tipster's complaint was in regards to Plaintiff's NEWPORT brand cigarettes purchased from Defendant's premises. (Dock. No. 106, Opinion 2). Plaintiff sent McCord to investigate Defendant on the basis of the complaint. While checking the NEWPORT brand cigarettes, McCord observed many packs of cigarettes that he suspected of being counterfeit. McCord removed one carton and one pack of NEWPORT King size soft pack cigarettes, the suspected counterfeit cigarettes, and replaced them with genuine NEWPORT 100's hard pack cigarettes. (Pl.'s Br. 3; Pl.'s Br. Ex. 4, McCord Aff. ¶ 5). Defendant contends that McCord removed seven cartons and seven packs of NEWPORT King size soft pack cigarettes. (Def.'s Resp. 4, Musleh Aff. ¶¶ 6, 9, 10).[2] After the removed NEWPORT King size cigarettes were inspected by Plaintiff, it was confirmed that they were indeed counterfeit. (Pl.'s Br. at 4). Upon this discovery, Plaintiff filed a six-count Complaint[3] on March 2, 2005. (*Id*.) Plaintiff also filed a Motion for Ex Parte Seizure Order,

---

[2] The Court notes that in the Musleh deposition, Musleh admits he did not see what McCord removed from the premises. (Pl.'s Br. Ex. 2, Musleh Dep. 217:18-24).

[3]
| Count I: | Trademark Counterfeiting and Infringement, 15 U.S.C. § 1114 |
| Count II: | Federal Unfair Competition and False Designations of Origin, and False and Misleading Representations, 15 U.S.C. § 1125(a) |
| Count III: | Trademark Dilution, 15 U.S.C. § 1125(c) |
| Count IV: | Common Law Unfair Competition |
| Count V: | Statutory Unfair Competition, MCL 429.42(a) |

3

Temporary Restraining Order, Preliminary Injunction, and Order Accelerating Discovery, which

this Court granted. (*Id*.). Subsequently, Plaintiff found fifty-one packs of counterfeit

NEWPORT brand cigarettes on Defendant's premises during the execution of the Seizure

Order.[4] (*Id*.).

On May 18, 2005, Defendant answered the Complaint and filed a four-count

Counterclaim alleging abuse of process, tortious interference with business expectations or

relationships, common law unfair competition, and extreme and outrageous conduct arising out

of Plaintiff's seizure of counterfeit cigarettes. (Dock. No. 7, Answer and Counterclaim).

Defendant claims that the items seized were planted at Defendant's site by Plaintiff's sales

representative, Michael McCord, at an earlier date.[5] (*Id*.).

On April 27, 2005, before Defendant filed responsive pleadings, it claimed that a fake

seizure occurred on the premises which resulted in the loss of documents and other evidence

supporting its claim. (*Id*.). At the alleged fake seizure, only one of Defendant's employees was

present, Mohammed Algaheim.[6] (*Id*.). After learning of the alleged fake seizure, Plaintiff

advised the Court and had the U.S. Attorney and F.B.I. investigate the incident. (*Id*. at 4 n.5).

No charges were filed subsequent to the investigation. (*Id*.).

---

Count VI:       Michigan Consumer Protection Act, MCL 445.903

[4] All of the packs found during the seizure were NEWPORT King size soft pack cigarettes. (*Id*.).

[5] Because Defendant alleges that the counterfeit items were planted, it refers to Plaintiff's seizure of this items as a "fake seizure."

[6] Mr. Algaheim allegedly left the country after the fake seizure and was unable to be located or produced for deposition until Defendant mentioned in its Motion to Amend Scheduling Order that Algaheim had returned from Yemen and is now free to be deposed. (Dock. No. 89, Jun. 7, 2006, Def.'s Br. 3).

On January 31, 2006, Magistrate Judge Capel held a motion hearing and ruled from the bench, granting both Defendant's leave to file a first amended counterclaim and Musleh's leave to intervene.  The Magistrate Judge issued a written order granting Defendant leave to file a first amended counterclaim and granting Musleh leave to intervene, on March 15, 2006. (Dock. No. 63).

A March 23, 2006 order by Magistrate Judge Capel compelled Defendant to produce its business computer, which Defendant alleged was tampered with during the fake seizure, so that Plaintiff's experts could inspect the computer.  (*See* Dock. No. 66, Order to Show Cause). However, Defendant failed to preserve the evidence referred to in the March 23, 2006 order.[7] Accordingly, the Magistrate Judge sanctioned Defendant by entitling Plaintiff to "an adverse inference and jury instruction that the jury may infer that Defendant's computer contained information relevant to the lawsuit, that Defendant deliberately destroyed that information contrary to [Magistrate Judge Capel's order], and that the information that was contained on Defendant's computer would have supported the claims and defenses of Plaintiff [] in this action and would have been adverse to the claims and defenses set forth by Defendant [] in this action." (Dock. No. 84, Order 2).

Defendant's attorney then moved to withdraw as counsel on April 4, 2006.  Plaintiff did not oppose the motion.  The motion was referred to Magistrate Judge Capel, who issued an order granting the withdrawal of Defendant's counsel on April 13, 2006.  Magistrate Judge Capel

---

[7] Specifically, the March 23, 2006 order allowed Plaintiff's representatives to create an image of the hard drive, inspect Defendant's business computer and any parts for alteration, destruction, damage or manipulation.  (Dock. No. 66, Order ¶ 1).  Defendant was also ordered not to tamper with the computer.  (*Id*. at ¶ 2).

ordered Defendant to obtain new representation within fourteen (14) days of receipt of the order.

On May 1, 2006, seventeen (17) days after Magistrate Judge Capel issued his order, Defendant's new counsel filed his appearance. The discovery period ended on April 26, 2006. Defendant did not file its Amended Counterclaim until June 1, 2006.

On June 7, 2006, Defendant and Third-Party Plaintiff Musleh filed a Motion to Amend the Scheduling Order. Plaintiff opposed this motion and filed a response on June 21, 2006. On June 8, 2006, Plaintiff filed a Motion to Strike Defendant's First Amended Counterclaim as untimely. Defendant responded on June 22, 2006. On July 17, 2006, the Magistrate Judge entered an order granting Plaintiff's Motion to Strike Defendant's First Amended Counterclaim As Untimely. Defendant appealed the Magistrate Judge's July 27, 2006 ruling. On August 23, 2006, this Court accepted the Magistrate Judge's ruling that Defendant's First Amended Counterclaim was untimely, and thereby denied Defendant and Third-Party Plaintiff's Motion to Amend.

Plaintiff argues that summary judgment is appropriate on its Trademark Counterfeiting and Infringement claim because: (1) Plaintiff is the owner of the trademarks; (2) Defendant's use of the trademarks is likely to cause confusion because Plaintiff's trademarks are strong, (3) Defendant's cigarettes appear identical and are similar to Plaintiff's NEWPORT brand of cigarettes, and (4) the marketing channels are also similar. Plaintiff argues that summary judgment is appropriate on its Unfair Competition and False Designations of Origin, and False and Misleading Representations claim. Plaintiff contends that it need only establish that Defendant's false designation hinders Plaintiff's ability to conduct its interstate business. Plaintiff avers that summary judgment is appropriate on its Dilution claim because: (1) Plaintiff

owns the marks; (2) the Defendant is making a commercial use of the mark in commerce; and (3) the Defendant's mark dilutes the famous mark. Plaintiff asserts that summary judgment is appropriate on its state law claims because the standards are similar to those used for federal trademark infringement. Plaintiff also contends that Defendant's sale/offering of counterfeit NEWPORT brand cigarettes was done willfully or with a reckless disregard for Plaintiff's trademarks, thereby increasing the statutory damages.

Defendant argues that Plaintiff is not entitled to summary judgment on its claims of counterfeiting and trademark infringement. Defendant claims that though it may be found liable for trademark infringement without the intent to infringe, a defendant cannot be found liable for counterfeiting unless their actions were knowing and intentional. Defendant contends that it is not liable for trademark infringement because Plaintiff secretly and fraudulently placed the counterfeit produce on its premises without permission. Defendant asserts that Plaintiff is not entitled to summary judgment on its counterfeiting claim because there is a question of fact as to whether Defendant had knowledge of the counterfeit cigarettes. Defendant argues that summary judgment should be denied on Plaintiff's unfair competition, false designations, description, and representation claim, Plaintiff's dilution claim, and state law claims, because a material fact exists as to whether or not Plaintiff fraudulently planted the counterfeit cigarettes. Defendant avers that summary judgment should not be granted on Plaintiff's willful selling of counterfeit cigarettes, because a genuine issue of material fact exists.

Plaintiff replies that none of the evidence presented by Defendant creates a dispute about a material fact. Plaintiff also argues that it is not bringing summary judgment under its 15

U.S.C. § 1114(1)(b) counterfeit claim.[8]

The instant Motion for Summary Judgment as to Liability was filed on May 30, 2006.

Defendant responded on July 7, 2006. On July 17, 2006, Plaintiff filed its reply. A hearing was

held on August 30, 2006.

## II.    ANALYSIS

### A.    Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim,

counterclaim, or cross-claim is asserted may "at any time, move with or without supporting

affidavits, for a summary judgment in the party's favor as to all or any part thereof." Fed. R.

Civ. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there

is no genuine issue of material fact as to the existence of an essential element of the non-moving

party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any," which it believes demonstrate
> the absence of a genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that

fact "would have [the] effect of establishing or refuting one of the essential elements of a cause

of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.

---

[8] It is unclear from the Complaint whether Plaintiff intended to allege a 15 U.S.C. § 1114(1)(b) counterfeiting claim.

1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted).  A dispute

over a material fact is genuine "if the evidence is such that a reasonable jury could return a

verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48

(1986).  Conversely, where a reasonable jury could not find for the non-moving party, there is no

genuine issue of material fact for trial.  *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654

(6th Cir. 1993).  In making this evaluation, the court must examine the evidence and draw all

reasonable inferences in favor of the non-moving party.  *Bender v. Southland Corp.*, 749 F.2d

1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a

showing that is "sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial" will mandate the entry of summary

judgment.  *Celotex*, 477 U.S. at 322-23.  The non-moving party may not rest upon the mere

allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in

Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial.

FED. R. CIV. P. 56(e).  The rule requires that non-moving party to introduce "evidence of

evidentiary quality" demonstrating the existence of a material fact.  *Bailey v. Floyd County Bd.*

*of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the

non-moving party must produce more than a scintilla of evidence to survive summary judgment).

## B.     Discussion

Plaintiff's Complaint alleges that Defendants are liable for trademark infringement under

the Lanham Act, 15 U.S.C. § 1114(1)(a), and unfair competition under the Lanham Act, 15

U.S.C. § 1125(a), dilution under 15 U.S.C. § 1125(c), and Michigan state law claims.

9

Section 1114 protects a trademark owner from any unauthorized uses that are likely to cause confusion, cause mistake, or to deceive. 15 U.S.C. § 1114(1). Thus, to prevail on an unfair competition or trademark infringement claim under the Lanham Act, the plaintiff must demonstrate a likelihood of confusion. *Frisch's Rests. Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 647 (6th Cir. 1982).

### 1.    Trademark Infringement

Under 15 U.S.C. § 1114(1):

Any person who shall, without the consent of the registrant–

> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale distribution, or advertising of any goods or services on or in connection with which such use is *likely to cause confusion*, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1)(a) (emphasis added). In determining whether an alleged infringement constitutes a likelihood of confusion, the Sixth Circuit considers the following factors:

(1)    Strength of plaintiff's mark;
(2)    Relatedness of the goods;
(3)    Similarity of the marks;
(4)    Evidence of actual confusion;
(5)    Marketing channels used;
(6)    Likely degree of purchaser care;
(7)    Defendant's intent in selecting the mark;
(8)    Likelihood of expansion of the product lines.

*Wynn Oil Co. v. Thomas,* 839 F.2d 1183, 1186 (6th Cir. 1988). "[A] showing of intent is not required to demonstrate the likelihood of confusion. While a 'defendant's intent' is one of the eight factors noted above, it is considered only in the sense that its existence can "strengthen[] the likelihood of confusion." *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc*., 453 F.3d 377, 381 (6th Cir. 2006).

10

> While a showing of "likelihood of confusion" does require that consumers mistakenly believe that the infringing goods were "sponsored or otherwise approved" by the plaintiff there is no further requirement that those goods must have been produced by the defendant. Indeed, all the statutes demand is that the defendant have "used" the goods "in commerce" (Sections 1114(1)(a) and 1125(a)), and we can think of no clearer "use" of goods "in commerce" than offering them for sale.  In sum, as the Seventh Circuit has put it concisely, "[s]ellers bear strict liability for violations of the Lanham Act" (*Hard Rock Café v Licensing Corp. v. Concession Servs., Inc*., 955 F.2d 1143, 1152 n.6 (7th Cir. 1992)), and we too decline to excuse Grand Foods from liability due either to its ignorance or to its role as a retailer rather than producer of the counterfeit goods.

*Id*. (citations omitted).  A plaintiff does not need to address every factor in order to prevail. *Wynn Oil*, 839 F.2d at 1186.

### a.    Strength of the Mark

"The strength of a mark is a factual determination of the mark's distinctiveness.  The more distinct a mark, the more likely is the confusion resulting from its infringement, and therefore the more protection it is due."  *Frisch's Rests Inc. v. Shoney's Inc.,* 759 F.2d 1261, 1264 (6th Cir. 1985).  Plaintiff's trademarks are strong trademarks in that the public readily accepts them as hallmarks of the Lorillard Tobacco Company.  *See id*.  It is also unique because the marks have been the subject of wide and intensive advertisements, and the NEWPORT brand has been developed into a highly distinctive mark.  This factor favors a likelihood of confusion.

### b.    Relatedness of the Goods

Regarding relatedness, cases fit into one of three categories: (1) where the parties compete directly by offering their goods or services; (2) where the goods or services are somewhat related but not competitive; (3) where the goods or services are totally unrelated. *See Champions Golf Club v. Champions Golf Club*, 78 F.3d 1111, 1118 (6th Cir. 1996).  "[Services and goods] are 'related' not because they coexist in the same broad industry, but are 'related' if

the services are marketed and consumed such that buyers are likely to believe that the services, similarly marked, come from the same source, or are somehow connected with or sponsored by a common company." *Homeowners Group v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1109 (6th Cir. 1991). "The question is, are the [goods or services] related so that they are likely to be connected in the mind [] of a prospective purchaser?" *Id.*

It is undisputed that goods in question are identical, as they are both cigarettes. Additionally, both Plaintiff's cigarettes and the counterfeit cigarettes are directly competing. Therefore, the Court finds that this factor favors Plaintiff.

### c.      Similarity of the Marks

"Similarity of marks is a factor of considerable weight." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 283 (6th Cir. 1997). "The appearance of the litigated marks side by side in the courtroom does not accurately portray market conditions." *Homeowners Group*, 931 F.2d at 1106. "Rather, courts must determine whether a given mark would confuse the public when viewed alone, in order to account for the possibility that sufficiently similar marks 'may confuse consumers who do not have both marks before them but who may have a 'general, vague, or even hazy, impression or recollection' of the other party's mark.'" *Big Daddy's*, 109 F.3d at 283 (internal citations omitted).

The trademarks at issue are virtually identical apparently with minor differences, such as the tint of the wrapping. This factor points towards a likelihood of confusion.

### d.      Evidence of Actual Confusion

"Evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion. Due to the difficulty of securing evidence of actual confusion, a lack of such

evidence is rarely significant, and the factor of actual confusion 'is weighted heavily only when there is evidence of past confusion, or perhaps, when the particular circumstances indicate such evidence should have been available.'"  *Big Daddy's*, 109 F.3d at 283 (internal citations omitted).

In the instant case, Plaintiff had presented evidence of one instance of actual confusion. A consumer purchased a pack of Plaintiff's cigarettes, and thinking that the cigarettes were manufactured by Plaintiff, smoked some of them.  The consumer noticed that the cigarettes were "stale/dry," the foil was "silver," and that the filter was "longer."[9]  The consumer then placed a complaint with Plaintiff.

"Considering that a successful Lanham Act plaintiff only must show a sufficient potential of confusion, not actual confusion, the fact that some confusion already has occurred favors plaintiff[,] at least to some extent."  *Big Daddy's*, 109 F.3d at 285.  Thus, the Court finds that this factor favors Plaintiff.

### e.    Marketing Channels Used

The Market Channels "factor . . . consists of considerations of how and to whom the respective goods or services of the parties are sold.  This factor involves two considerations: (1) whether the parties use the same means to market the product, and (2) whether the 'predominant customers' are the same."  *GMC v. Keystone Auto. Indus.*, 453 F.3d 351, 357 (6th Cir. 2006). Here, the parties use the same means to market the product (the Service Station), and their customers are identical.  This factor favors Plaintiff.

---

[9]  The Lorillard Telephone Complaint Form was submitted to the Court in its redacted form and has not been placed on the docket.

### f.    Likely Degree of Purchaser Care

The less attention a consumer gives to the purchase of the services at issue, the greater the likelihood of confusion between marks. *Wynn Oil*, 839 F.2d at 1188.  The standard is of a typical buyer exercising ordinary caution.  *Homeowners Group*, 931 F.2d at 1111.  When the purchaser has expertise or when services are expensive or unusual, a higher standard is proper. *Id*.                Cigarette buyers use a low degree of care as a typical buyer is not sophisticated nor has expertise in cigarettes.  A cigarette purchaser naturally would assume that he/she is receiving an authentic cigarette product.   As a result, this factor favors Plaintiff.

Defendant argues that though lack of intent does not exempt it from liability, logic and equity dictate that a defendant may not be held liable for trademark infringement when the party suing them for such infringement secretly and fraudulently placed the counterfeit product at issue on the defendant's premises without permission.  Defendant cites *Channell Chem. Co. v. E.W. Hayden Co.*, 222 F. 162 (D.C. Ohio 1915).  In *Channell*, the plaintiff sued the defendant, a competitor, to protect a trademark under which it was sold.  In ruling against the plaintiff, the court found that the plaintiff made false representations in its advertisements regarding the product it wished to protect.  The court held:

> When the owner of a trade-mark applies for an injunction to restrain the defendant from injuring his property by making false representations to the public, it is essential that the plaintiff should not, in his trade-mark or in his advertisements and business, be himself guilty of any false or misleading representation, and if he makes any material false statement in connection with the property which he seeks to protect, he loses his right to claim the assistance of a court of equity.

*Id*. at 163 (citing *Worden v. California Fig Syrup Co.*, 187 U.S. 516 (1903)).

In response, Plaintiff stands by its argument that Defendant's contention is irrelevant to the trademark infringement analysis, and asserts that the fact is not material and cannot preclude

14

summary judgment.

The instant case is distinguishable from *Channell*.  In *Channell*, the court had indisputable evidence that the plaintiff was guilty of false and misleading advertising of its product.  Here, we are not dealing with false or misleading advertising of a product, nor does the Court have indisputable evidence that Plaintiff planted the counterfeit cigarettes.  Importantly, *Channell* was not a case decided under the Lanham Act.  Defendant does not cite any case law on point, or any other case law in an attempt to support its position that it can avoid summary judgment on a trademark infringement claim by asserting the infringing items were planted on its premises.

However, Defendant has provided the affidavit and deposition testimony of Musleh, who states that McCord planted counterfeit cigarettes at the store on February 23, 2005.  (Def.'s Resp. Ex. J, Musleh Aff. ¶ 3).  Musleh's affidavit also states that he has not "knowingly" purchased, stocked or sold counterfeit cigarettes at Defendant's location.[10]  (*Id.* at ¶ 5).  In addition to Musleh's affidavit, Defendant also provided the affidavit of Mohamed Algahaim, a cashier and manager at the Service Station.  (Def.'s Resp. Ex. H, Algahaim Aff. ¶ 3).  Algahaim appears to state in his affidavit that McCord planted the cigarettes found during the seizure.  (*Id.* at ¶ 9).

Plaintiff argues that even assuming it did plant the counterfeit cigarettes, the fact that the cigarettes were planted by Plaintiff is not material.  The Court finds Plaintiff's argument

---

[10] Plaintiff argues that Musleh testified that he was not present at the store on February 23, 2005, the time when McCord exchanged cigarettes and thus it is impossible for Musleh to have personal knowledge of what McCord did on that date.  Plaintiff contends that Musleh's affidavit contradicts his deposition testimony.  (Pl.'s Reply 3 n.4).

persuasive.  Plaintiff asks this Court to take a snapshot of February, 23, 2005, the day McCord investigated the consumer complaint.  It is undisputed that on that day, McCord removed NEWPORT King size cigarettes from Defendant's premises.  What is disputed is whether McCord removed one pack and one carton, or seven packs and seven cartons of the King size cigarettes.  Whether or not cigarettes were planted in Defendant's inventory on February 23, 2005 is irrelevant to the infringement issue resulting from the cigarettes removed by McCord on that date.  Musleh and Algahaim both state in their affidavits that the cigarettes which were recovered during the March 7, 2005 seizure were planted by McCord during his February 23, 2005 visit.  Neither Musleh or Algahaim allege that the cigarettes were removed from Defendant's premises by McCord during his February 23, 2005 visit were planted by McCord.  Additionally, Plaintiff provided evidence that the chain of custody for the NEWPORT Kings, removed from Defendant's premises on February 23, 2005, was not broken.  (*See* Pl.'s Br. Ex. 14, Chain of Custody).

After an analysis of the Sixth Circuit factors and taking into account Defendant's argument, the cumulative effect of these factors require that this Court find that, as a matter of law, a likelihood of consumer confusion exists.  Indeed, Defendant failed to present any evidence to dispute the fact that consumer would be confused by the counterfeit product located in its inventory.  The Court notes that intent on the part of Defendant to sell counterfeit goods is not necessary and that the Sixth Circuit ruled that ignorance does not excuse a defendant from liability.  *See Lorillard Tobacco Co..,* 453 F.3d at 381-82.  All the statute demands is that Defendant "used" the goods in commerce, and this was done when Defendant offered the cigarettes for sale on its premises.

16

Taking the facts in a light most favorable to the Defendant, regardless of whether Plaintiff's representative planted the counterfeit cigarettes at Defendant's location on February 23, 2005, there is no allegation that the cigarettes removed from Defendant's premises on that date were planted by Plaintiff.  As a result, there is no genuine issue of material fact as to whether the counterfeit cigarettes removed on February 23, 2005 were planted by Plaintiff and thus, summary judgment can be found in Plaintiff's favor.  Accordingly, the Court finds that Plaintiff is entitled to summary judgment on its claim of trademark infringement under 15 U.S.C. § 1114(1)(a).

### 2.    False Designation

The Court's finding that a likelihood of confusion exists is also dispositive on Plaintiff's claims of false designation.

> A person engages in unfair competition if he or she, on or in connection with any goods or services, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact in a manner that is likely to cause confusion.

15 U.S.C. § 1125(a)(1)(A).  To establish false designation, a plaintiff must demonstrate that: (1) the false designation has a substantial economic effect on interstate commerce; and (2) the false designation creates a likelihood of confusion.  *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998).  As such, part of the *prima facie* case of false designation requires the plaintiff to show that likelihood of confusion.  The factors for determining likelihood of confusion for a false designation of origin claim under § 1125 are identical to those for a trademark infringement claim under § 1114.  *Champions Golf Club, Inc*., 78 F.3d at 1123.

Since Plaintiff showed the confusing similarity of the marks above, all that remains is for

Plaintiff to show that the false designation had a substantial economic effect on interstate commerce.

Defendant does not contest that the infringement had an economic effect on interstate commerce. Although Defendant argues that there is a material fact in existence as to whether or not Plaintiff planted the counterfeit cigarettes in the Service Plaza prior to the "fake seizure," this fact is not material and does not preclude summary judgment. Therefore, the Court finds this issue does not support Defendant's argument that summary judgment should be denied.

Accordingly, for the reasons stated in under the Court's trademark infringement analysis, *supra*, the Court finds that Plaintiff is entitled to summary judgment on its claim of false designation under 15 U.S.C. 1125(a)(1).

### 3.    State Law Claims

Plaintiff argues that the standard for Michigan's unfair competition statute, Michigan's common law unfair competition, and the Michigan Consumer Protection Act ("MCPA") is the same as used for federal trademark infringement and federal unfair competition, and thus summary judgment should be granted.

The Sixth Circuit has noted that the Lanham Act and Michigan state law unfair competition claims were both governed by the same standards. *Carson v. Here's Johnny Portable Toilets. Inc*., 698 F.2d 831, 833 (6th Cir. 1983). Likewise, common law unfair competition claims and unfair business practices under the MCPA are governed by the same standards as the Lanham Act. *Wynn Oil*, 943 F.2d at 605; *Wilcom Pty. Ltd. v. Endless Visions*, 128 F. Supp. 2d 1027, 1033 (E.D. Mich. 1998).

Because the Court granted summary judgment in favor of Plaintiff on its federal

trademark infringement claim, the Court grants Plaintiff's Motion for Summary Judgment on its state law claims.

### 4.      Dilution

A claim of dilution under 15 U.S.C. § 1125(c) consists of the following elements: (1) the senior mark must be famous; (2) it must be distinctive; (3) the junior use must be a commercial use in commerce; (4) it must begin after the senior mark has become famous; and (5) it must cause dilution of the distinctive quality of the senior mark. *Kellogg Co. v. Exxon Corp*., 209 F.3d 562, 577 (6th Cir. 2000).

It is undisputed that Plaintiff owns the marks for its NEWPORT brand cigarettes, and that it has made commercial use of the mark.  The NEWPORT marks are distinctive.  The counterfeit cigarettes were found after Plaintiff's marks became famous, as they were found on Defendant's premises during February 2005.  Defendant does not contest that Plaintiff's marks were famous. The infringing cigarettes found on Defendant's premises were part of Defendant's inventory used in commerce.  Additionally, Defendant's mark and Plaintiff's mark are identical.  Thus, actual dilution can be reliably proven.  *See Moseley v. V. Secret Catalogue, Inc.*, 537 U.S. 418, 434 (2003) ("Direct evidence of dilution . . . will not be necessary if actual dilution can reliably be proved through circumstantial evidence – the obvious case is one where the junior and senior marks are identical.")

Accordingly, the Court grants summary judgment on Plaintiff's dilution claim under 15 U.S.C. § 1125(c).

### 5.      Statutory Damages under 15 U.S.C. § 1117(c)

Plaintiff argues that because Defendant violated the relevant provision of the Lanham Act

willfully or with a reckless disregard for Plaintiff's protected trademarks, the statutory damages are increased. Plaintiff alleges that there is no genuine issue of material fact as to whether Defendant's sale and/or offering for sale of counterfeit NEWPORT brand cigarettes was done intentionally or recklessly. The evidence Plaintiff proffers is Defendant's willful destruction and alteration of evidence in this case, the alleged admission by Musleh in his deposition of knowingly and blatantly disregarding other businesses' contractual terms, in order to purchase cheaper cigarettes, and the deposition testimony of Defendant's former employee, who testified that Defendant purchased NEWPORT brand cigarettes from non-legitimate sources. Plaintiff requests a finding of willfulness and a separate hearing to assess the amount of statutory damages to which it is entitled.

Under the statutory damages provision of the Lanham Act, a trademark owner may elect, at any time before final judgment is rendered, to recover an award of statutory damages for any use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services. 15 U.S.C. § 1117(c).

> In a case involving the use of a counterfeit mark (as defined in section 34(d) (15 U.S.C. 1116(d)) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of--
>> (1) not less than $ 500 or more than $ 100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>> (2) if the court finds that the use of the counterfeit mark was *willful*, not more than $ 1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c) (emphasis added). "In the civil context, 'willful conduct denotes intentional, knowing and voluntary acts. It may also indicate a reckless disregard for obvious or

known risks.'" *Thomsen v. United States*, 887 F.2d 12, 17 (1st Cir. 1989). "Willful infringement

may be attributed to the defendant's actions where he had knowledge that his conduct constituted

infringement or where he showed a reckless disregard for the owner's rights." *Wildlife Express*

*Corp. v. Carol Wright Sales, Inc*., 18 F.3d 502, 511 (7th Cir. 1994).

Thus, the present statutory minimum and maximum are $500 and $100,000 per

counterfeit mark per type of goods or services sold for non-willful infringement. 15 U.S.C. §

1117(c)(1). A court may award up to $ 1,000,000 per counterfeit mark if the plaintiff proves that

the infringement was committed willfully. 15 U.S.C. § 1117(c)(2).

The only evidence proffered by Plaintiff to prove willfulness or recklessness that cannot

be disputed, is that Defendant intentionally and willfully violated the Court's order to preserve

and protect evidence on its computer that was relevant to this lawsuit. However, this is not

enough evidence to support willful counterfeiting on the part of Defendant. Although counterfeit

items were found on Defendant's premises and removed on February 23, 2005, Defendant

disputes that he knowingly purchased counterfeit cigarettes. In fact, Defendant claims that any

counterfeit cigarettes found in the subsequent court-ordered seizure were planted by McCord on

February 23, 2005. Additionally, while Musleh may have admitted that he purchased

NEWPORT brand cigarettes from other places of business to see at Defendant's service station,

this does not show willfulness to possess and/or sell counterfeit cigarettes. Finally, Defendant

disputes Ibrahim Obaid's testimony that Defendant purchased cigarettes from "some guy named

Ali" who sold all brands of cigarettes. (*See* Pl.'s Br. Ex. 15, Obaid Dep. 45-46). Therefore, in a

light most favorable to the Defendant, Defendant attempted to purchase cigarettes from

legitimate sources. Accordingly, this Court declines to find willfulness on the part of Defendant,

although the issue of damages remains open and willfulness can be argued at trial.

While the Court finds that Defendant committed trademark infringement, the Court does not rule as to how many items infringed upon the mark. This opinion recognizes that regardless of whether McCord removed one pack and one carton, or seven pack and seven cartons, counterfeiting items were removed from Defendant's premises. Therefore, there is a genuine issue of material fact as to the number of counterfeiting items that were in Defendant's possession and removed from Defendant's inventory by McCord.

Accordingly, Plaintiff's Motion for Summary Judgment is denied to the extent it asks for a finding of willfulness on the part of Defendant.

## III.     CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Summary Judgment. The Court GRANTS Plaintiff's motion as to Counts I – VI. The Court DENIES Plaintiff's motion to the extent it asks for a finding of willfulness on the part of the Defendant regarding statutory damages under 15 U.S.C. § 1117(c).

As a result of this Opinion and Order, the only issue remaining is the extent of Plaintiff's damages.

**SO ORDERED.**


                                        s/Paul D. Borman_____
                                        PAUL D. BORMAN
                                        UNITED STATES DISTRICT JUDGE

Dated:  October 19, 2006

CERTIFICATE OF SERVICE

22

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on October 19, 2006.

s/Denise Goodine
Case Manager