**UNITED STATE DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LORILLARD TOBACCO COMPANY, a
Delaware corporation,

               Plaintiff,

v.

YAZAN'S SERVICE PLAZA, INC., a
Michigan corporation,

               Defendants.
_____ /

Case Number: 05-70804

JUDGE PAUL D. BORMAN
MAG. JUDGE WALLACE CAPEL, JR.
UNITED STATES DISTRICT COURT

**OPINION AND ORDER:**
**(1) DENYING DEFENDANT'S MOTION IN LIMINE TO DETERMINE THE LEVEL**
**OF INTENT NECESSARY TO ESTABLISH LIABILITY FOR COUNTERFEITING**
**UNDER 15 U.S.C. § 1114(1) (DOCK. NO. 120)**
**(2) DENYING DEFENDANT'S MOTION IN LIMINE TO EXCLUDE PLAINTIFF**
**FROM INTRODUCING ITS PURPORTED CUSTOMER COMPLAINT INTO**
**EVIDENCE AT TRIAL AND/OR PRESENTING TESTIMONY REGARDING SAID**
**CUSTOMER COMPLAINT AT TRIAL (DOCK. NO. 121)**
**(3) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION IN**
**LIMINE TO PRECLUDE EVIDENCE AT TRIAL THAT IS IRRELEVANT AND**
**RELATED TO MATTERS ALREADY DECIDED BY THIS COURT (DOCK. NO. 122)**
**(4) GRANTING PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE INFERENCES**
**THAT PLAINTIFF INSTITUTED THIS ACTION BECAUSE OF RACIAL OR ETHNIC**
**BIAS, PERPETRATED A FAKE SEIZURE, OR IMPERSONATED FEDERAL**
**OFFICERS (DOCK. NO. 123)**

Now before the Court is Plaintiff's and Defendant's Motions *in Limine* (Dock. No. 120-

123). A motion hearing was held on June 5, 2007. Having considered the entire record, and for

the reasons that follow, the Court:

    (1)    DENIES Defendant's Motion *in Limine* to Determine the Level of Intent
           Necessary to Establish Liability for Counterfieting under 15 U.S.C. § 1114(1);

(2)      DENIES Defendant's Motion *in Limine* to Exclude Plaintiff from Introducing its Purported Customer Complaint into Evidence at Trial and/or Presenting Testimony Regarding said Customer Complaint at Trial;

(3)      GRANTS IN PART and DENIES IN PART Plaintiff's Motion *in Limine* to Preclude Evidence at Trial that is Irrelevant and Related to Matter Already Decided by this Court. The Court GRANTS Plaintiff's motion as to the relitigation of the Consumer Complaint and the alleged bribe attempt. The Court DENIES Plaintiff's motion as to the relitigation of the damaged computer as moot because the Court will issue an instruction to the jury; and

(4)      GRANTS Plaintiff's Motion *in Limine* to Preclude Inferences that Plaintiff Instituted this Action Because of Racial or Ethnic Bias, Perpetrated a Fake Seizure, Or Impersonated Federal Officers

## I.    FACTS

Plaintiff Lorillard Tobacco Company ("Plaintiff" or "Lorillard") is a Delaware corporation with its principal place of business in Greensboro, North Carolina. (Compl. ¶ 6). Plaintiff manufactures and sells cigarettes in the United States. (Compl. ¶ 6; Pl.'s Br. 2). Defendant Yazan's Smokers Shop, Inc. ("Defendant" or "Service Plaza") is a Michigan corporation.

Plaintiff manufactures its cigarettes in North Carolina and distributes them throughout the county via a network of wholesalers and retailers. *Id.* Plaintiff has been using the NEWPORT[1] trademark since the mid-1950s and incorporates its trademarks into its cigarettes and cigarette packaging. *Id.*

Plaintiff holds federal registrations for the following marks (the "marks"): LORILLARD, NEWPORT, NEWPORT (stylized), Spinnaker Design, and NEWPORT and design. (Pl.'s Br.

---

[1] The name NEWPORT was registered with the United States Patent and Trademark Office ("USPTO") on December 12, 1978 and owned by Plaintiff. (Compl. Ex. B). Plaintiff also registered the NEWPORT design and symbol with the USPTO. (*See* Compl. Ex. C, D, E).

Ex. 3, Certifications of Registration).

In October of 2003, Defendant contracted with Plaintiff to receive reimbursements and product offers from Plaintiff in exchange for displaying Plaintiff's marketing and advertising materials on the premises. (Def.'s Resp. 1). Defendant claims that because of a previous, similar agreement with Plaintiff's competitor, Phillip Morris, Plaintiff and Defendant agreed that Plaintiff's advertisements would only be placed in certain locations within the Service Plaza. (*Id.* at 2). Defendant alleges that in 2004, a confrontation ensued between Plaintiff's representative and Defendant's representative regarding the placement of Plaintiff's advertisements, whereby Plaintiff's representative allegedly ripped up the contract between Plaintiff and Defendant in front of a number of witnesses at the Service Plaza. (*Id.*). Immediately following that incident, Defendant alleges that Michael McCord ("McCord"), a Lorillard sales representative, proposed that he would make the advertising problem could "go away" for $2,000.00. (*Id.*). Defendant's representative, Dr. Yazan Musleh ("Musleh"), turned down the "bribe" and McCord responded by allegedly stating, "I'm going to get you back, asshole." (*Id.* at 3). Musleh then contacted the Hamtramck Police Department to report the bribe and also sent a letter to Plaintiff regarding McCord's conduct. (*Id.*).

In February of 2005, Lorillard Tobacco Company ("Plaintiff") received a complaint from a consumer ("tipster") via its "1-800" consumer hotline number that existed for the purpose of reporting possible counterfeit cigarettes. (Dock. No. 106, Opinion 2). The tipster's complaint was in regards to Plaintiff's NEWPORT brand cigarettes purchased from Defendant's premises. (Dock. No. 106, Opinion 2). Plaintiff sent McCord to investigate Defendant on the basis of the complaint. While checking the NEWPORT brand cigarettes, McCord observed many packs of

cigarettes that he suspected of being counterfeit. McCord removed one carton and one pack of

NEWPORT King size soft pack cigarettes, the suspected counterfeit cigarettes, and replaced

them with genuine NEWPORT 100's hard pack cigarettes. (Pl.'s Br. 3; Pl.'s Br. Ex. 4, McCord

Aff. ¶ 5). Defendant contends that McCord removed seven cartons and seven packs of

NEWPORT King size soft pack cigarettes. (Def.'s Resp. 4, Musleh Aff. ¶¶ 6, 9, 10).[2] After the

removed NEWPORT King size cigarettes were inspected by Plaintiff, it was confirmed that they

were indeed counterfeit. (Pl.'s Br. at 4). Upon this discovery, Plaintiff filed a six-count

Complaint[3] on March 2, 2005. (*Id.*) Plaintiff also filed a Motion for Ex Parte Seizure Order,

Temporary Restraining Order, Preliminary Injunction, and Order Accelerating Discovery, which

this Court granted. (*Id.*). Subsequently, Plaintiff found fifty-one packs of counterfeit

NEWPORT brand cigarettes on Defendant's premises during the execution of the Seizure

Order.[4] (*Id.*).

On May 18, 2005, Defendant answered the Complaint and filed a four-count

Counterclaim alleging abuse of process, tortious interference with business expectations or

relationships, common law unfair competition, and extreme and outrageous conduct arising out

---

[2] The Court notes that in the Musleh deposition, Musleh admits he did not see what McCord removed from the premises. (Pl.'s Br. Ex. 2, Musleh Dep. 217:18-24).

[3] Count I:      Trademark Counterfeiting and Infringement, 15 U.S.C. § 1114
   Count II:     Federal Unfair Competition and False Designations of Origin, and False
                 and Misleading Representations, 15 U.S.C. § 1125(a)
   Count III:    Trademark Dilution, 15 U.S.C. § 1125(c)
   Count IV:     Common Law Unfair Competition
   Count V:      Statutory Unfair Competition, MCL 429.42(a)
   Count VI:     Michigan Consumer Protection Act, MCL 445.903

[4] All of the packs found during the seizure were NEWPORT King size soft pack cigarettes.
(*Id.*).

of Plaintiff's seizure of counterfeit cigarettes. (Dock. No. 7, Answer and Counterclaim).

Defendant claims that the items seized were planted at Defendant's site by Plaintiff's sales

representative, Michael McCord, at an earlier date.[5] (*Id.*).

On April 27, 2005, before Defendant filed responsive pleadings, it claimed that a fake

seizure occurred on the premises which resulted in the loss of documents and other evidence

supporting its claim. (*Id.*). At the alleged fake seizure, only one of Defendant's employees was

present, Mohammed Algaheim.[6] (*Id.*). After learning of the alleged fake seizure, Plaintiff

advised the Court and had the U.S. Attorney and F.B.I. investigate the incident. (*Id.* at 4 n.5).

No charges were filed as a result of the investigation. (*Id.*).

On January 31, 2006, Magistrate Judge Capel held a motion hearing and ruled from the

bench, granting both Defendant's leave to file a first amended counterclaim and Musleh's leave

to intervene. The Magistrate Judge issued a written order granting Defendant leave to file a first

amended counterclaim and granting Musleh leave to intervene, on March 15, 2006. (Dock. No.

63).

A March 23, 2006 order by Magistrate Judge Capel compelled Defendant to produce its

business computer, which Defendant alleged was tampered with during the fake seizure, so that

Plaintiff's experts could inspect the computer. (*See* Dock. No. 66, Order to Show Cause).

---

[5] Because Defendant alleges that the counterfeit items were planted, it refers to Plaintiff's seizure of this items as a "fake seizure."

[6] Mr. Algaheim allegedly left the country after the fake seizure and was unable to be located or produced for deposition until Defendant mentioned in its Motion to Amend Scheduling Order that Algaheim had returned from Yemen and is now free to be deposed. (Dock. No. 89, Jun. 7, 2006, Def.'s Br. 3).

However, Defendant failed to preserve the evidence referred to in the March 23, 2006 order.[7]

Accordingly, the Magistrate Judge sanctioned Defendant by entitling Plaintiff to:

> [A]n adverse inference and jury instruction that the jury may infer that Defendant's computer contained information relevant to the lawsuit, that Defendant deliberately destroyed that information contrary to [Magistrate Judge Capel's order], and that the information that was contained on Defendant's computer would have supported the claims and defenses of Plaintiff [] in this action and would have been adverse to the claims and defenses set forth by Defendant [] in this action.

(Dock. No. 84, Order 2).

Defendant's attorney then moved to withdraw as counsel on April 4, 2006. Plaintiff did not oppose the motion. The motion was referred to Magistrate Judge Capel, who issued an order granting the withdrawal of Defendant's counsel on April 13, 2006. Magistrate Judge Capel ordered Defendant to obtain new representation within fourteen (14) days of receipt of the order. (Dock. No. 75).

On May 1, 2006, seventeen (17) days after Magistrate Judge Capel issued his order, Defendant's new counsel filed his appearance. The discovery period ended on April 26, 2006. Defendant did not file its Amended Counterclaim until June 1, 2006.

On June 7, 2006, Defendant and Third-Party Plaintiff Musleh filed a Motion to Amend the Scheduling Order. Plaintiff opposed this motion and filed a response on June 21, 2006. On June 8, 2006, Plaintiff filed a Motion to Strike Defendant's First Amended Counterclaim as untimely. Defendant responded on June 22, 2006. On July 17, 2006, the Magistrate Judge entered an order granting Plaintiff's Motion to Strike Defendant's First Amended Counterclaim

---

[7] Specifically, the March 23, 2006 order allowed Plaintiff's representatives to create an image of the hard drive, inspect Defendant's business computer and any parts for alteration, destruction, damage or manipulation. (Dock. No. 66, Order ¶ 1). Defendant was also ordered not to tamper with the computer. (*Id*. at ¶ 2).

As Untimely. (Dock No. 100). Defendant appealed the Magistrate Judge's July 27, 2006 ruling. On August 23, 2006, this Court accepted the Magistrate Judge's ruling that Defendant's First Amended Counterclaim was untimely, and thereby denied Defendant and Third-Party Plaintiff's Motion to Amend. (Dock No. 107).

On September 11, 2006, the Court: granted Plaintiff's Motion for Judgment on the Pleadings as to Defendant's Counterclaim Counts I, II and IV, and granted Plaintiff's Motion for Summary Judgment as to Count II of Defendant's Counterclaim. *Lorillard v. Yazan's Service Plaza*, No. 05-70804, 2006 WL 2594937 (E.D. Mich. Sept. 11, 2006) (unpublished). On October 19, 2006, the Court granted in part and denied in part Plaintiff's Motion for Summary Judgment on its claims. *Lorillard v. Yazan's Service Plaza*, No. 05-70804, 2006 WL 2990508 (E.D. Mich. Oct. 19, 2006) (unpublished). The Court granted the motion as to Count I - VI, but denied the motion to the extent it asked for a finding of wilfulness on the part of Defendant under 15 U.S.C. § 1117(c).

Plaintiff and Defendant each filed their Motions *in Limine* on April 13, 2007. Responses and Replies followed.

A.    DEFENDANT'S MOTION IN LIMINE TO DETERMINE THE LEVEL OF
        INTENT NECESSARY TO ESTABLISH LIABILITY FOR
        COUNTERFEITING UNDER 15 U.S.C. § 1114(1)

Defendant argues that Plaintiff must allege that Defendant infringed upon a registered trademark in violation of § 1114 and that the Defendant intentionally used the mark knowing it was a counterfeit.

Plaintiff asserts that it is opting for statutory damages pursuant to 15 U.S.C. § 1117(c), not actual damages under § 1117(b) as Defendant contends. Plaintiff submits that § 1117(c) was

7

added to address the situations where a counterfeiter hide, alter, or destroy records, making it impossible for plaintiffs to determine and prove the scope of their damages. Plaintiff avers that in order to prove willfulness, it does not have to demonstrate that Defendant's infringement was intentional or voluntary, but can also show that Defendant's actions were undertaken with willful blindness or with a reckless disregard.

The Court previously found Defendant liable for trademark infringement under 15 U.S.C. § 1114(1)(a). *Lorillard v. Yazan's Service Plaza*, No. 05-70804, 2006 WL 2990508 (E.D. Mich. Oct. 19, 2006) (unpublished). Plaintiff opted to recover statutory damages pursuant to § 1117(c). Under the statutory damages provision of the Lanham Act, a trademark owner may elect, at any time before final judgment is rendered, to recover an award of statutory damages for any use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services:

> In a case involving the use of a counterfeit mark (as defined in section 34(d) (15 U.S.C. 1116(d)) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of--
>> (1) not less than $ 500 or more than $ 100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>> (2) if the court finds that the use of the counterfeit mark was *willful*, not more than $ 1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c) (emphasis added). The issue in this motion is whether Plaintiff may demonstrate "willfulness," under § 1117(c)(2), by showing that defendant's actions were undertaken with willful blindness or with a reckless disregard for Plaintiff's rights.

Other circuits have found that willfulness under the Lanham act includes recklessness, in addition to intentional and knowing acts. The First Circuit has held that "[i]n the civil context, 'willful conduct denotes intentional, knowing and voluntary acts[, and] may also indicate a reckless disregard for obvious or known risks.'" *Thomsen v. United States*, 887 F.2d 12, 17 (1st Cir. 1989). "Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994).

The Sixth Circuit has only defined "willful" in the attorney fee context of the Lanham Act. In that context, it held that "willful or bad faith infringement, so as to justify an award of attorney's fees, usually means passing off a product or service as another seller's better established one, or some other deliberate theft of a marketholder's goodwill." *Johnson v. Jones*, 149 F.3d 494, 503 (6th Cir. 1998).

Recently, however, in *Safeco Ins. Co. of America v. Charles Burr*, 127 S.Ct. 2201 (2007), the Supreme Court held that:

> [W]illfully is a word of many meanings whose construction is often dependant on the context in which it appears, and where willfulness is a statutory condition of civil liability, we have generally taken it to cover *not only knowing violations of a standard, but reckless ones as well*.

*Id*. at 2208 (citations and quotations omitted) (emphasis added). The Supreme Court also found that:

> [T]he term recklessness is not self-defining, [but] the common law has generally understood it in the sphere of civil liability as conduct violating an objective standard: action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known.

*Id.* at 2215  (citations and quotations omitted).

Plaintiff argues that *Safeco* specifically distinguishes the standard for willfulness in the criminal and civil context.  Plaintiff asserts that under *Safeco*, limiting willfulness to knowing or intentional violations is only appropriate in the criminal context.

Defendant submits that *Safeco* does not specifically define "willful" under the Lanham Act and thus the prior rulings stand, which hold that the willfulness standard for increasing damages under 15 U.S.C. § 1117(c) are knowingly or intentional action, and not reckless actions. *See Lorillard v. Kamposh*, No. 05-71324, 2006 WL 3497311 (E.D. Mich. Dec. 1, 2006).

The Court finds Plaintiff's argument convincing.  In *Safeco*, the Court applied the common law civil liability meaning of willful to § 1681n(a) of the Fair Credit Reporting Act.  In doing so, the Court stated that "the general rule that a common law term in a statute comes with a common law meaning, absent anything pointing another way."  *Id.* at 2209.

Thus, under *Safeco*, absent anything from the statute which points this Court in another direction, the common law construction of willful applies.  The Court does not find anything in the statute to point it in another direction, *a fortiori*, the common law construction applies here to willful in 15 U.S.C. § 1117(c), and treats actions that are in reckless disregard of the law as willful violations.

Therefore, the Court finds that the willfulness standard for increasing damages under 15 U.S.C. § 1117(c) includes knowingly, intentional, or *reckless*.  Accordingly, the Court denies Defendant's Motion in Limine to Determine the Level of Intent Necessary to Establish Liability for Counterfeiting under 15 U.S.C. § 1114(1).

      B.     DEFENDANT'S MOTION IN LIMINE TO EXCLUDE PLAINTIFF FROM INTRODUCING ITS PURPORTED CUSTOMER COMPLAINT INTO

EVIDENCE AT TRIAL AND/OR PRESENTING TESTIMONY REGARDING
SAID CUSTOMER COMPLAINT AT TRIAL

Defendant argues that pursuant to Federal Rule of Evidence 403, the probative value of

the redacted Customer Complaint is substantially outweighed by the danger of unfair prejudice.

The unfair prejudice, according to Defendant, is that the Customer Complaint allows the jury to

reach a verdict on an improper basis. Defendant submits that it cannot challenged the veracity of

the complaint due to the Court's August 21, 2006 Order, in which this Court overruled the

Magistrate Judge and denied the disclosure of the personal information on the Customer

Complaint. Defendant also believes that if the introduction of the Customer Complaint is

allowed, it will invite the jury to inform that the complaint and McCord's February 23, 2005 visit

to Defendant was valid. In the alternative, Defendant argues that the Customer Complaint is

inadmissible hearsay pursuant to Rule 801 and 802, as it is offered for the truth of the matter

asserted.

Plaintiff responds that it is the party which will be prejudiced if the Customer Complaint

is precluded. Plaintiff maintains that the probative value substantially outweighs any prejudicial

effect on Defendant because it rebuts Defendant's defense that the counterfeit cigarettes were

planted in the Service Plaza after Plaintiff's sales representative demanded a bribe and was

refused. Plaintiff also argues that the Consumer Complaint is not hearsay because it is not being

used to prove the truth of the matter asserted – that Defendant sold bad tasting cigarettes.

Plaintiff contends that the Consumer Complaint will be used as notice of a potential issue, which

was then investigated. In the alterative that the Court finds that the complaint is hearsay,

Plaintiff submits that it falls within the business records exception.

Federal Rule of Evidence 401 defines relevant evidence as "evidence having any

tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "A district court has 'broad discretion to determine matters of relevance.'" *Williams v. Nashville Network*, 132 F.3d 1123 (6th Cir. 1997). "Evidence that is not relevant is not admissible." FED. R. EVID. 402. Federal Rule of Evidence 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). Hearsay statements must fall under a hearsay exception or be allowed because of another rule to be admissible. FED. R. EVID. 802. Hearsay statements within hearsay must also come within a hearsay exception to be admitted for their truth. FED. R. EVID. 805. One category of evidence excluded from the hearsay rule is found in Federal Rule of Evidence 803(6), the business records exception. To fall within the exception, the evidence must be from information recorded by a person with knowledge and kept in the course of a regularly conducted business activity. FED. R. EVID. 803(6). These characteristics must be shown by the testimony of a qualified witness, and the exception does not apply if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." *Id.*

Defendant questions the veracity of the complaint, but admits it cannot challenge the veracity due to this Court's August 21, 2006 Opinion and Order. *Lorillard v. Yazan's Service Plaza*, No. 05-70804, 2006 WL 2431394 (E.D. Mich. Aug 21, 2006) (unpublished). However, this Court, upon reviewing *in camera* the non-redacted complaint, found no reason to question

veracity.[8] Thus, the Court overruled the Magistrate Judge and denied the disclosure of the personal information on the Customer Complaint, and in so doing, found no prejudice to Defendant. *Id.* The Court does not see a reason to reverse its prior ruling. The customer's personal information is irrelevant to the issue of damages and the Court finds that the probative value substantially outweighs any prejudice.

The Court also finds that the Customer Complaint is not being offered for the truth of the matter asserted, i.e., that the cigarettes tasted bad. Rather than using the Customer Complaint to show that bad tasting cigarettes were sold by Defendant, Plaintiff uses the complaint to show that there was a reason to inspect the Service Station's inventory.

For the reasons stated above, the Court DENIES Defendant's motion.

C.     PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE EVIDENCE AT TRIAL THAT IS IRRELEVANT AND RELATED TO MATTERS ALREADY DECIDED BY THIS COURT (DOCK. NO. 122)

Plaintiff makes two arguments in the instant motion. First, Plaintiff argues that the majority of issues raised by Defendant in the Final Pre-Trial Order have been decided by this Court and reconsidering those issues are barred by the law of the case doctrine. Second, Plaintiff also argues that Rules 401 and 402 preclude Defendant from attempting to litigate issues that are irrelevant to damages issue.

1.     Relitigation of Issues

Plaintiff contends that whether it received the Consumer Complaint, and whether

---

[8] In that Opinion and Order, the Court stated:
"The tipster's identity is not essential or necessary to prepare for this civil case. The real issue, appears to be that Defendant believes the tipster was not a real individual. After reviewing the redacted information, the Court finds that the information provided is sufficient to show that a real individual telephoned a complaint to Plaintiff, which Plaintiff investigated." *Id.* at *2.

counterfeit cigarette were obtained, has already been litigated and decided in the Court's October 19, 2006 Opinion and Order.

Defendant responds that there is a genuine issue of material fact as to whether McCord obtained counterfeit cigarettes from the Service Plaza in February 2005. Defendant believes that any such conclusion by the Court in its October 19, 2006 Opinion and Order was premature. To support its assertion, Defendant points out the evidence it presented creating an issue of material fact: a large number of deponents who testified that they witnessed McCord attempting to solicit a bribe prior to his February 23, 2005 inspection; Musleh's testimony that McCord threatened to "get him back" after the bribe was rejected; evidence that McCord planted counterfeit cigarettes at the Service Plaza; and the repeated denial by Musleh that the Service Plaza ever stocked or sold counterfeit cigarettes. Defendant asserts that Plaintiff should be precluded from introducing evidence of the complaint.

The law of the case doctrine "states that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Patterson v. Haskins*, 470 F.3d 645, 660-61 (6th Cir. 2006) (citation omitted). The doctrine was developed to keep rulings consistent and avoid repetitious reconsideration of matters that have already been decided course of a continuing lawsuit. *Rosales-Garcia v. Holland*, 322 F.3d 386, 398 n.11 (6th Cir. 2003). As a result of the Court's prior finding, the Court holds that Defendant is precluding from offering any evidence or argument regarding whether Plaintiff actually received a Customer Complaint.

Defendant's position regarding the Customer Complaint and its legitimacy is not new, and the Court ruled in the prior motion *in limine* that the Customer Complaint is not excluded.

Likewise, the Court previously ruled on the issue of whether issues of material fact remain

regarding the discovery of counterfeit cigarettes on February 23, 2005.  In its October 19, 2006

Opinion and Order, *Yazan's Service Plaza*, 2006 WL 2990508, the Court held:

> Defendant does not cite any case law on point, or any other case law in an attempt
> to support its position that it can avoid summary judgment on a trademark
> infringement claim by asserting the infringing items were planted on its premises.
> . . . .
> Whether or not cigarettes were planted in Defendant's inventory on February 23,
> 2005 is irrelevant to the infringement issue resulting from the cigarettes removed
> by McCord on that Date.  Musleh and Algahaim both state in their affidavits that
> the cigarettes which were recovered during the March 7, 20065 seizure were
> planted by McCord during his February 23, 2005 visit.  Neither Musleh or
> Algahaim allege that the cigarettes [which] were removed from the premises by
> McCord during his February 23, 2005 visit were planted by McCord.
> Additionally, Plaintiff provided evidence that the chain of custody for the
> NEWPORT Kings, removed from Defendant's premises on February 23, 2005,
> was not broken.

*Id*. at *8.  Although Defendant claims that such conclusion by the Court was premature, the

Court viewed the facts in a light most favorable to Defendant, and found that the cigarettes

removed from the Service Plaza on February 23, 2005 and sent to Plaintiff's corporate

headquarters, were counterfeit.

The law of the case doctrine applies.  Defendant did not seek reconsideration of the

ruling.  Instead, it appears Defendant wishes to rehash the argument in the hopes of gaining a

second bite at the apple.  The Court disagrees and stand by its prior ruling.  Accordingly, the

Court finds that Defendant is precluding from offering any evidence or argument regarding

whether McCord obtained counterfeit cigarettes from Defendant during his February 23, 2005

visit.

Additionally, Plaintiff asserts that Defendant cannot relitigate how its computer was

damaged because that issue was previously ruled upon by the Magistrate Judge after significant

discovery and oral arguments.

Defendant proffers that it should be able to introduce evidence relating to the state of one of its computers prior to the initiation of an adverse inference. Defendant believes that it would be inequitable and prejudicial to allow Plaintiff to introduce facts relating to the sequence of events leading to the adverse inference without its ability to do so. Defendant avers that the Magistrate Judge's order states the jury "may" infer the adverse inference, which is permissive. Thus, Defendant argues that it should be allowed to introduce its evidence.

Plaintiff filed its Motion for Sanctions Due to Defendant's Failure to Preserve and Produce Evidence on April 3, 2006. After extensive briefing and oral arguments, the Magistrate Judge held that:

1.  Defendant intentionally and willfully violated the Court's Order to preserve and produce the evidence set forth in the Court's Order granting Plaintiff's Motion for Show Cause Order and Sanctions due to Defendant's Failure to Comply with a Court Order.
2.  As a sanction for Defendant's willful and deliberate violation of the Court's Order, Plaintiff is entitled to an adverse inference and a jury instruction that the jury may infer that the Defendant's computer contained information relevant to this lawsuit, that Defendant deliberately destroyed that information contrary to an Order of this Court, and that the information that was contained on Defendant's computer would have supported the claims and defenses of Plaintiff [] in this action and would have been adverse to the claims and defenses set forth by Defendant [] in this action.

(Dock. No. 84, May 25, 2006, Order 2). Despite the above order, Defendant argues in its Response that it would be inequitable and prejudicial to allow Plaintiff to introduce evidence at trial regarding the sequence of events leading to the adverse inference. Defendants assert that in order for a jury to determine what information was contained on the computer, whether the computer was intentionally destroyed, and whether any information contained on the computer

would be harmful to Defendant's case, the jurors should be allowed to consider facts leading up to the reformatting.

At the motion hearing, the parties agreed that if the Court is to give an instruction on the issue, then the argument is moot. The Court agrees and will read an instruction to the jury which states that the Court has made a determination that there was a destruction of evidence and as a result of the destruction of evidence, the jury may infer that (1) Defendant's computer contained information relevant to this lawsuit; (2) Defendant deliberately destroyed that information contrary to an Order of this Court; and (3) the information that was contained on Defendant's computer would have supported the claims and defenses of Plaintiff in this action and would have been adverse to the claims and defenses set forth by Defendant in this action. Accordingly, the Court finds that this issue is moot.

2.      Irrelevant Issues

Plaintiff also argues that Rules 401 and 402 preclude Defendant from attempting to litigate issues that are irrelevant to damages. Specifically, Plaintiff argues that evidence of an alleged bribe is not relevant to the issues that remain for trial. Plaintiff points out that Defendant has already been found liable as a result of the counterfeit cigarettes located in its inventory on February 23, 2005. Plaintiff maintains that even if Defendant's allegations were true, any improper conduct could not be imputed to Plaintiff.

Defendant responds that evidence surrounding the bribe attempt is relevant under Rule 401 because if McCord did attempt to bribe Musleh, then it is more likely that McCord had a motive to lie about the counterfeit cigarettes, and more likely that he planted the cigarettes. Defendant contends that this evidence is critical and relevant to determining whether or not

Defendant knowingly sold counterfeit cigarettes under § 1117(c) statutory damages.

Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "A district court has 'broad discretion to determine matters of relevance.'" *Williams*, 132 F.3d 1123. "Evidence that is not relevant is not admissible." FED. R. EVID. 402.

By way of the Court's October 19, 2006 Opinion and Order, summary judgment was granted in favor of Plaintiff, with the amount of damages being the only issue left to be decided at trial. *Yazan's Service Plaza*, 2006 WL 2990508 at *12. It follows that the issue of whether the cigarettes found were counterfeit has been decided. While Defendant claims that evidence of McCord's alleged bribe is critical to showing that Defendant did not knowingly sell counterfeit cigarettes, the Court does not agree. Defendant wants to offer evidence of the bribe in order to create an inference that McCord planted the counterfeit cigarettes. But this Court has already found that regardless of whether McCord planted the cigarettes on February 23, 2005, the counterfeit cigarettes found on that date were already in Defendant's inventory. Thus, Defendant's evidence regarding the bribe addresses the incorrect issue; it addresses whether Defendant knowingly sold cigarettes between February 23, 2005 and the March 7, 2005 search of the premises, and not whether Defendant knowingly sold cigarettes prior to February 23, 2005. The planting of cigarettes on February 23, 2005 in Defendant's inventory (which were found in the March 7, 2005 search), even if true, is irrelevant in this case and therefore, evidence of the bribe is irrelevant. Defendant never presented evidence that the cigarettes removed from the premises on February 23, 2005 were planted by McCord and thus his actions are irrelevant

18

and inadmissable under Rules 401 and 402.  Accordingly, the Court bars Defendant from presenting evidence regarding McCord's alleged bribe attempt.

For the reasons stated above, the Court GRANTS Plaintiff's motion as to the Relitigation of the Consumer Complaint and the alleged bribe attempt. The Court DENIES Plaintiff's motion as to the relitigation of the damaged computer as moot because the Court will issue an instruction to the jury.

### D. PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE INFERENCES THAT PLAINTIFF INSTITUTED THIS ACTION BECAUSE OF RACIAL OR ETHNIC BIAS, PERPETRATED A FAKE SEIZURE, OR IMPERSONATED FEDERAL OFFICERS

Plaintiff argues that because inferences can only be made during trial if it can be drawn from the evidence without resort to speculation, Defendant should not be allowed to infer that: (1) Plaintiff instituted this action because of race or ethical bias; (2) Plaintiff perpetrated a fake seizure on Defendant's premises that resulted in the destruction of evidence favorable to Defendant; and (3) Plaintiff impersonated federal officers when conducting witness interviews. Plaintiff proffers that the Court has already granted Plaintiff's Motion to Dismiss and Motion for Summary Judgment on Defendant's counterclaims, which makes the same accusations.  Plaintiff contends that the U.S. Attorney's office did not file charges against Plaintiff with regard to an alleged fake seizure or impersonation of agents.  Plaintiff submits that it never alleged that Defendant due to its owner's ethnicity, participated in terrorists activity.

Defendant does not oppose Plaintiff's motion as it relates to the impersonation of Federal officers.  Defendant asserts that testimony of McCord's alleged bribe attempt, Musleh's testimony that McCord threatened him when the bribe was rebuffed, Alahaim's affidavit that McCord planted counterfeit cigarettes, and Musleh's testimony that Defendant never sold or

stocked counterfeit cigarettes, demonstrates McCord's motive for revenge, lack of character, and unethical business practices. Defendant also maintains that Musleh has reached the conclusion that race and ethical bias played a role in Plaintiff's conduct.

The Court agrees with Plaintiff. Nowhere in the record is there evidence that Plaintiff instituted this action because of race or an ethical bias. Defendant did not allege this in any of its prior pleadings, nor does it give support for its accusation in its Response to the instant motion. Regarding the fake seizure, the Court has already held that this, assuming its truth, is irrelevant to whether Defendant was selling the counterfeit cigarettes found on February 23, 2005.

For the reasons stated above, the Court GRANT Plaintiff's motion.

## III.     CONCLUSION

For the reasons stated above, the Court:

(1)     DENIES Defendant's Motion in Limine to Determine the Level of Intent Necessary to Establish Liability for Counterfieting under 15 U.S.C. § 1114(1);

(2)     DENIES Defendant's Motion in Limine to Exclude Plaintiff from Introducing its Purported Customer Complaint into Evidence at Trial and/or Presenting Testimony Regarding said Customer Complaint at Trial;

(3)     GRANTS IN PART and DENIES IN PART Plaintiff's Motion in Limine to Preclude Evidence at Trial that is Irrelevant and Related to Matter Already Decided by this Court. The Court GRANTS Plaintiff's motion as to the relitigation of the Consumer Complaint and the alleged bribe attempt. The Court DENIES Plaintiff's motion as to the relitigation of the damaged computer as moot because the Court will issue an instruction to the jury; and

(4)     GRANTS Plaintiff's Motion in Limine to Preclude Inferences that Plaintiff Instituted this Action Because of Racial or Ethnic Bias, Perpetrated a Fake Seizure, Or Impersonated Federal Officers

**SO ORDERED**

s/Paul D. Borman

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  June 25, 2007

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on June 25, 2007.

s/Denise Goodine
Case Manager